UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

QUADE EVERETT and LAQUANDA
EVERETT,

    Plaintiffs,

v.                                                 Case No: 8:14-cv-2508-T-36AEP

CITY OF ST. PETERSBURG, BRIAN
FERNANDEZ and BRIAN PREST,

    Defendants.
_____/

## ORDER

This cause comes before the Court upon the Motion to Dismiss filed by Defendants City of St. Petersburg ("City") and Brian Prest ("Prest") (Doc. 25). Plaintiffs Quade Everett ("Everett") and LaQuanda Everett (collectively, "Plaintiffs") responded in opposition to the Motion (Doc. 32). The Court, having considered the Motion and being fully advised in the premises, will now DENY the Motion.

### I.   STATEMENT OF FACTS[1]

This civil rights action arises out of the injuries suffered by Quade Everett at the hands of law enforcement. The First Amended Complaint alleges as follows: Police Officer Brian Fernandez ("Fernandez") was employed as a Police Officer by the City of St. Petersburg Police Department ("Police Department"). Doc. 22 ("Am. Compl.") ¶ 8. On the morning of December 23, 2013, Fernandez received a message to conduct a "go-by" in the area of 20th Avenue and 11th

---

[1] The following statement of facts is derived from Plaintiffs' First Amended Complaint (Doc. 22), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

Street South to locate a stolen vehicle. *Id.* ¶ 13. At that time, Fernandez was a probationary officer who had only been riding by himself for approximately two months. *Id.* ¶ 14. Fernandez was armed with City-issued equipment, including a firearm, taser, baton, handcuffs, ammunition clips, and pepper spray. *Id.* ¶ 15.

When Fernandez arrived in the area, he observed several vehicles in the front yard of 2011 11th Street South, and as he approached the residence on foot, he observed several individuals in the yard. *Id.* ¶ 16. According to Fernandez, one of the individuals appeared to be holding a device used for breaking into vehicles, and appeared to be attempting to enter into a vehicle. *Id.* Upon realizing that they had been seen, the individuals began running to various vehicles parked in the yard in an effort to avoid police contact. *Id.*

One of those individuals was Everett, who, Fernandez confirmed, was unarmed at the time. *Id.* ¶ 17. Everett briefly ran towards Fernandez and then turned to enter a vehicle. *Id.* Fernandez drew his weapon, pointed it at Everett, and claims to have given verbal commands to stop. *Id.* Everett ran past Fernandez, entered a pickup truck that was backed into the lot at 2011 11th Street South, and began to pull out of the lot towards the street. *Id.* ¶ 18. At no time was Fernandez positioned in front of the truck. *Id.* Nevertheless, as Everett was driving away, and without any prior warning, Fernandez fired six times into the vehicle from various angles. *Id.* ¶ 19-22. Everett was struck in the right shoulder and head. *Id.* ¶ 24.

After the shooting stopped, Police Officer Brian Prest arrived at the scene. *Id.* ¶ 26. The two officers opened the door of the truck Everett had been driving, and Everett slumped out, unconscious. *Id.* ¶ 28. The officers shoved Everett's body back into the truck. *Id.* They did not render any medical aid, summon emergency medical assistance, or provide any other assistance. *Id.* Rather, all they did was turn the truck's ignition off. *Id.* ¶ 38. Finally, after a substantial

passage of time, an ambulance arrived and transported Everett to the hospital to treat the gunshot wounds to his shoulder and head. *Id.* ¶ 42. Everett ultimately survived his injuries. *Id.* ¶ 1. Fernandez was subsequently terminated from his employment as a Police Officer for his role in the shooting. *Id.* ¶ 32.

Plaintiffs assert a total of four Counts in their First Amended Complaint. The first three Counts are brought pursuant to 42 U.S.C. § 1983, as follows: Count I alleges that Fernandez, in his individual capacity, violated Everett's Fourth Amendment rights by using unreasonable and excessive force to seize him; Count II alleges that the City's policies and customs of failing to properly train and/or supervise its police officers caused the violation of Everett's Fourth Amendment rights; and Count III alleges that Prest and Fernandez, in their individual capacities, violated Everett's Fourth Amendment[2] rights by failing to render or obtain medical aid for him. Count IV alleges common law battery against City for Fernandez's conduct in shooting Everett.

City now moves to dismiss Count II, and Prest moves to dismiss Count III.

## II. LEGAL STANDARD

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the

---

[2] As will be discussed in more detail in footnote 4, *infra*, going forward, the Court will treat Count III as arising under the Fourteenth (rather than the Fourth) Amendment.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).  The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id*.

## III.   DISCUSSION

### A.   City's Motion to Dismiss

A municipality can be held liable under Section 1983 if "action pursuant to official municipal policy [or custom] of some nature caused a constitutional tort."  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).  Accordingly, in order to state a Section 1983 claim against a municipality, a plaintiff must identify a municipal "policy" or "custom" that caused the plaintiff's injury.  *See Bd. of Cnty. Commr's v. Brown*, 520 U.S. 397, 403 (1997).  An allegation of a failure to train or supervise can form the basis for municipal liability under Section 1983.  *See Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  As with any other type of Section 1983 claim against a municipality, such failure to train or supervise must be a city policy or custom. *See id.*  However, because a municipality rarely will have an express policy of inadequately training or supervising its employees, a plaintiff may prove the existence of such a policy by showing that the municipality's failure to train or supervise evidenced a "deliberate indifference" to the rights of its citizens.  *Id.*; *see also City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").  To establish deliberate indifference, a plaintiff must show that the municipality knew of a need to train and/or supervise in a particular area, but made a deliberate choice not to take any action.  *See Gold*, 151 F.3d at 1350.

4

Plaintiffs allege that the City's policies, customs, and usages of failing to properly train and/or supervise its officers were the moving force in causing the violation of Everett's constitutional rights. Specifically, Plaintiffs allege that between 2011 and 2013, there was a ten-fold rise in the shooting of citizens by the City's police officers. *See* Am. Compl. ¶¶ 44-46. Plaintiffs further allege that, although Police Chief Chuck Harmon ostensibly changed the Police Department's written policies regarding the discharge of firearms by police officers in response to the rise in shootings, the Police Department failed to engage in any meaningful training to ensure the implementation of these new policies. *Id.* ¶¶ 47-48. Rather, according to Plaintiffs, the Police Department maintained its *de facto* policy of hiring and dispatching new officers without properly training or supervising them on the use of deadly force. *Id.* ¶¶ 51-52. Plaintiffs also allege that Fernandez was one such insufficiently-trained officer—who, despite his status as a "Probationary Officer," was sent on a call that the Police Department knew would very likely result in an officer's improper use of deadly force, while being given unsupervised and unrestricted use of his firearm, all in accordance with the Police Department's faulty policies and practices. *Id.* ¶¶ 53-59.

The City argues that Plaintiffs have failed to state a claim for municipal liability because, according to the City, Plaintiffs have failed to sufficiently allege that the City had any policy of inadequate training or supervision or that the City had notice of the need to train or supervise in any particular area. The City's arguments are without merit.

*First*, although the only written or otherwise formally recognized policies alleged by Plaintiffs are those changed by Chief Harmon in response to the rise in citizen shootings in 2013, *see* Am. Compl. ¶ 48, a policy need not be reduced to written form or deemed "official" by the municipality to form the basis for Section 1983 liability, *see Gold*, 151 F.3d at 1350. Indeed, a *de facto* policy such as the one alleged by Plaintiffs is sufficient to support a Section 1983 claim

against a municipality. *See Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986) ("[T]he custom need not receive formal approval.").

*Second*, Plaintiffs' allegations are sufficient to establish that the City had notice of the need to train and/or supervise. As noted above, Plaintiffs allege that the number of citizen shootings by the St. Petersburg Police Department rose from just one in 2011 to ten in 2013, and that, in response to this "alarming rise in police shootings," Chief Harmon purported to change the Police Department's policies regarding the discharge of firearms. *See* Am. Compl. ¶¶ 44-47. When these allegations are viewed in the light most favorable to Plaintiffs, the Court can reasonably infer that, as of 2013, the City was aware that its police officers were being improperly trained and/or supervised regarding the use of deadly force. Specifically, the allegation that Chief Harmon purported to change the Police Department's firearm discharge policies in response to the sharp rise in citizen shootings directly supports the contention that the rise in citizen shootings put the City on notice that it had been failing to properly train and/or supervise its police officers.

Citing numerous opinions, the City contends Plaintiffs' allegations fall short of establishing that the City had notice because the number of citizen shootings "mean[s] nothing" without assertions that those shootings were unconstitutional or otherwise similar to the one that occurred here. The majority of the opinions cited by the City, however, are distinguishable on the ground that they were decided only after the parties had a full opportunity to engage in the discovery process. *See Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987) (ruling on a motion for judgment notwithstanding the verdict); *Gold*, 151 F.3d (same); *Carter v. Columbus Consol. Government*, 559 Fed. App'x 880 (11th Cir. 2014) (ruling on a motion for summary judgment). In other words, those opinions held only that such bare facts are insufficient as a matter of law *after* discovery. Here, by contrast, Plaintiffs have not yet had the formal opportunity to flesh out their allegations,

6

and, as discussed above, the favorable inferences to which Plaintiffs are entitled at this stage in the litigation are sufficient to establish notice.

The only opinion cited by the City that was decided at the pleadings stage, *Albra v. City of Fort Lauderdale*, 232 Fed. App'x 885 (11th Cir. 2007), is distinguishable on the facts. In *Albra*, the plaintiff simply alleged in a conclusory manner that "the City was on notice that it had negligently trained its police officers," and also failed to provide "any factual support to suggest that department officials or the City was on notice of [the police officers' alleged custom of refusing to investigate claims]." *Id.* at 890 and n.1. Unlike the plaintiff in *Albra*, however, Plaintiffs here have pleaded specific facts—namely, a sharp rise in citizen shootings, to which Chief Harmon ostensibly responded—that permit the Court to infer that the City was well aware of its alleged *de facto* policy of failing to properly train and/or supervise its police officers.[3]

In sum, the City's arguments are unavailing. Plaintiffs have sufficiently alleged a claim for failure to train and/or supervise. The Court, accordingly, will deny the motion to dismiss as it relates to Count II.

### B. Prest's Motion to Dismiss

Qualified immunity protects government officials performing discretionary functions from being sued in their individual capacities unless their conduct violates a clearly established statutory or constitutional right. *See Brannon v. Finkelstein*, 754 F.3d 1269, 1278 (11th Cir. 2014). In order to establish a defense of qualified immunity, a government official must first demonstrate that he or she was acting within his or her discretionary authority. *See Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003). The burden then shifts to the plaintiff to show that qualified immunity is not

---

[3] *Albra* is also an unpublished decision and, therefore, of no precedential value. *See* 11th Cir. R. 36-2.

appropriate. *See Dalyrymple*, 334 F.3d at 995. To evaluate whether qualified immunity is appropriate, a court determines (1) whether the facts alleged make out a violation of a constitutional right; and (2) whether that right was "clearly established" at the time of the alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A court has the discretion to address the two prongs of the analysis in either order. *See id.* at 236. For purposes of this inquiry, a right is "clearly established" if "(1) case law with indistinguishable facts clearly establish[es] the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law [] clearly establishes a constitutional right; or (3) [the] conduct [was] so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Maddox v. Stephens*, 727 F.3d 1109, 1121 (11th Cir. 2013) (quotation marks and citation omitted).

Count III alleges that Prest and Fernandez violated Everett's constitutional rights by failing to reasonably render or summon emergency medical treatment for his gunshot wounds.[4] To state a claim for failure to render aid, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).[5] More specifically, a plaintiff's allegations must establish that he or she had an

---

[4] The First Amended Complaint alleges that Count III arises under the Fourth Amendment. *See* Am. Compl. ¶¶ 68-69. Prest contends, and the Court (and Plaintiffs) agree, that this claim should have been brought under the Fourteenth Amendment. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . . ."). However, because the parties have fully briefed Prest's Motion to Dismiss as if this claim had properly been raised under the Fourteenth Amendment, rather than dismissing Count III on this narrow basis, the Court, going forward, will treat Count III as if it had been pleaded correctly under the Fourteenth Amendment. Should this litigation proceed to trial, the parties' pretrial statements shall reflect that Count III arises under the Fourteenth Amendment.

[5] Although the claim in *Estelle* was brought by a prisoner and thus arose under the Eighth Amendment, the same standard applies to claims made by arrestees, which, as discussed in footnote 4, *supra*, arise under the Fourteenth Amendment. *See Hamm v. Dekalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985) ("[I]n regard to providing pretrial detainees with such basic

"objectively serious medical need," and "that the [] official acted with an attitude of 'deliberate indifference' to that serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

Prest argues that he is entitled to qualified immunity as to Count III, because, according to Prest, Plaintiffs have failed to address his state of mind, and a police officer's failure to render medical aid to a gunshot victim does not violate the victim's clearly established constitutional rights.[6] Prest's arguments are unpersuasive.

*First*, Plaintiffs' allegations sufficiently assert that Prest was deliberately indifferent to Everett's serious medical needs. Specifically, Plaintiffs allege that Prest (and Fernandez) opened the door of the vehicle Everett had been driving, watched Everett's body slump out of the vehicle, and then, rather than call for medical assistance of any sort, simply shoved Everett's unconscious body back into the vehicle. *See* Am. Compl. ¶ 28. Because Everett's injury and condition were so obvious and obviously life-threatening, the Court can infer from the alleged sequence of events that Prest subjectively knew of, yet chose to disregard, Everett's critical need for medical assistance. This is sufficient to establish deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("deliberate indifference" entails situations where an officer "knows of and disregards an excessive risk to [arrestee's] health or safety").

*Second*, Prest is incorrect that a gunshot victim categorically has no clearly-established constitutional right to medical assistance. In support of his theory, Prest relies only on *Pierce v. Springfield Township*, 562 Fed. App'x 431, 437 (6th Cir. 2014), in which the Sixth Circuit Court of Appeals held that two police officers were entitled to qualified immunity as to a Section 1983 claim for failing to treat a gunshot victim. *Pierce*, however, is readily distinguishable on the facts:

---

necessities as . . . medical care[,] the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons.").

[6] It is undisputed that, at all relevant times, Prest was acting within his discretionary authority.

9

the "victim" in that case was armed and had inflicted the wound upon himself; the police officers had not restrained or even touched the victim; and the police officers had promptly sought and obtained medical assistance. *See id.* at 433. Here, unlike *Pierce*, the First Amended Complaint alleges that police officers shot an unarmed man multiple times in an attempt to detain him, and that, after observing his unconscious, bullet-riddled body, chose not to seek medical assistance in a timely fashion. Moreover, the holding in *Pierce* turned on the fact that the victim had never been placed in custody, *see id.* at 437, and Prest does not suggest that incapacitating Everett by shooting him several times was insufficient to place him in custody. In any case, notwithstanding *Pierce*, the Eleventh Circuit has clearly and unequivocally established that a detainee like Everett who suffers from a medical condition that "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" has a constitutional right not to have his condition deliberately ignored by the detaining authorities. *Farrow*, 320 F.3d at 1243.

In sum, Plaintiffs have adequately alleged facts that would establish that Prest was deliberately indifferent towards Everett's objectively serious medical condition, in violation of his clearly established constitutional rights. Accordingly, at this stage of the litigation, Prest is not entitled to qualified immunity, and the Court will deny the motion to dismiss as it relates to Prest.

## IV. CONCLUSION

Through their allegations, Plaintiffs have established both that Everett's constitutional rights were violated as a result of the City's policies and customs of failing to adequately train and/or supervise its police officers, and that Prest violated Everett's clearly established constitutional rights when he failed to timely seek or render medical aid for Everett's gunshot wounds.

Accordingly, it is hereby **ORDERED**:

1. Defendants City of St. Petersburg and Brian Prest's Motion to Dismiss (Doc. 25) is

   **DENIED.**

   **DONE AND ORDERED** in Tampa, Florida on August 11, 2015.

   Charlene Edwards Honeywell
   United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any