UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

QUADE EVERETT and LAQUANDA EVERETT,

    Plaintiffs,

v.

Case No: 8:14-cv-2508-T-36AEP

CITY OF ST. PETERSBURG, BRIAN FERNANDEZ and BRIAN PREST,

    Defendants.
_____/

# **ORDER**

THIS MATTER comes before the Court upon the Report and Recommendation of Magistrate Judge Anthony Porcelli (Doc. 144), the Plaintiffs' Objections to the Report and Recommendations [sic] of the Magistrate Judge (Doc. 144) (the "Objection") and Former Counsel's Response (Doc. 146). In the Objection, Plaintiffs argue that the Magistrate Judge erred on several points in his Report and Recommendation ("R&R"). Upon consideration of the R&R, this Court's independent examination of the file de novo, and a review of the Objection and the response thereto, it is determined that the R&R should be adopted, confirmed and approved in all respects.

    **I.    Background**

Plaintiffs, Quade Everett and Laquanda Everett, filed a lawsuit against the City of St. Petersburg (the "City") and one of its current and former police officers by and through its former counsel Wardell & Quezon, P.A. ("Former Counsel"). Docs. 1, 22. Former Counsel represented Plaintiffs in this action filed pursuant to 42 U.S.C. § 1983 for the shooting of Quade Everett by a police officer. Quade Everett sustained life threatening injuries which put him in a coma and

reduced his mental capacity. During the litigation, the City made an offer of settlement to the Plaintiffs in the amount of $910,000. Plaintiffs rejected the offer in spite of Former Counsel's insistence that it was a very good offer. After some communication back and forth between the Plaintiffs and Former Counsel, and a brief time when Plaintiffs retained the Dolman Law Group, Plaintiffs ultimately retained their current counsel in the case, Gary, Williams, Parenti, Watson, and Gary, PLLC ("Plaintiffs' Counsel"). There is some dispute about whether the Plaintiffs intended Former Counsel to act as co-counsel with the Dolman Law Group and Plaintiffs' Counsel. But ultimately the Plaintiffs sent a letter to Former Counsel indicating that they were terminating Former Counsel's representation in this case and requesting receipt of all material related to the case. *See* Docs. 47 at 12-14, 85.

Plaintiffs' Counsel ultimately obtained a $2.68 million settlement with the City. Doc. 115 at 11. Subsequently, Former Counsel filed a motion to approve their fee agreement with Plaintiffs, which the Court denied. Doc. 48. Former Counsel then filed a charging lien, seeking costs and fees, (Doc. 77), a Motion for the Court to Exercise Supplemental Jurisdiction to Determine Charging Lien and Distribution of Settlement Funds (Doc. 78), and an Unopposed Motion and Memorandum for the Court to Exercise Supplemental Jurisdiction and Accept Attached Complaint for Intervention (the "Unopposed Motion"). Doc. 85. The Court granted the Unopposed Motion in part and decided that the fee dispute would continue as a summary proceeding. Doc. 96.

The fee dispute revolves around the contingency fee arrangement between Former Counsel and Plaintiffs which called for a fee totaling 40% of all recovery obtained after the filing of a complaint and before trial. Because Plaintiffs terminated Former Counsel prior to settling, the contingency was not triggered and the contract was unenforceable. However, case law contemplates a quantum meruit award under these circumstances.

The R&R concluded that Former Counsel was in fact entitled to a quantum meruit award in the amount of $200,000 which constitutes: $177,837 lodestar[1] calculation based on the following time expenditures and rates: 376.56 hours x $400 per hour for a total of $150,624 for attorney James Wardell, 76 hours x $300 per hour for a total of $22,800 for attorney Jaime Quezon, and 35.3 hours x $125 per hour for a total of $4,412.50 for paralegal Kathryn Daley[2]) with a slight increase to the lodestar in light of the totality of the circumstances. Doc. 141 at 10. The R&R states that the initial offer was the largest in the history of the City[3] and the City dramatically increased its offer based in part on the Former Counsel's pleadings and investigation. *Id*.

II. **Legal Standard**

When a party makes a timely and specific objection to a Magistrate Judge's Report and Recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *Jeffrey S. v. State Board of Education of State of Georgia*, 896 F.2d 507, 512 (11th Cir. 1990). With regard to those portions of the Report and Recommendation not objected to, the district judge applies a clearly erroneous standard of review. *See Gropp v. United Airlines, Inc*., 817 F. Supp. 1558, 1562 (M.D. Fla. 1993). The district judge may accept, reject, or modify in whole or in part, the Report and Recommendation of the Magistrate Judge. Fed.R.Civ.P. 72. The district judge may also receive further evidence or recommit the matter to the Magistrate Judge with further instructions. *Id*.

---

[1] The lodestar figure is calculated by multiplying the reasonable number of hours the attorney expended by the reasonable hourly rate. *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 368 (Fla. 1995).

[2] The total sum is precisely $177,836.50.

[3] Although Plaintiffs' Counsel complains that the Magistrate Judge relied on this factual assertion, they offer no contrary evidence to dispute that the $910,000 was in fact the largest monetary settlement offer in the City's history. *See* Doc. 144 at 20 (discussing the dispute as to who actually came up with the settlement figure in the negotiation and whether a home for the Plaintiffs was actually part of the offer).

**III. Discussion**

Upon de novo review, the Court agrees with the conclusions in the Magistrate Judge's R&R. Plaintiffs make several objections which fall largely into three categories: (1) the Magistrate Judge did not properly review the facts because he did not permit limited discovery and an evidentiary hearing to flesh out the factual disputes and impermissibly read the facts in the light most favorable to Former Counsel; (2) the Magistrate Judge impermissibly accepted the fee contract as valid, where no valid contract existed given the impermissible 40% contingency fee, Plaintiffs' misunderstanding of the contract, and Former Counsel's unethical behavior, and (3) Former Counsel did not confer a benefit to Plaintiffs sufficient to justify a $200,000 award of fees because the evidence in the record shows that Former Counsel conducted very limited research and investigation, Former Counsel was discharged for cause which caused Plaintiffs to sustain damages, and the record otherwise does not support the fee award.

Former Counsel argues that there were several problems in the case justifying acceptance of the $910,000 settlement offer including Quade Everett's conduct at the time of the incident (potential criminal conduct and attempt to flee in a stolen vehicle), and disputes between the Plaintiffs which was documented in a police report filed by a third party the same month Former Counsel filed suit. *See* Doc. 106, Ex. J. They also argue that although Plaintiffs' Counsel complains that only the Amended Complaint was provided along with other limited investigatory and research material, the Amended Complaint was very detailed and reflected the investigations and interviews Former Counsel conducted. Plaintiffs' Counsel settled in part based on the allegations within it. They never filed or moved for leave to file a Second Amended Complaint. Former Counsel also argues that the Amended Complaint demonstrates their thorough knowledge of the

4

law in this area, including municipal liability pursuant to *Monell v. Dept. of Soc. Services of City of New York,* 436 U.S. 658 (1978), contrary to Plaintiffs' Counsel's assertions in the Objection.

Former Counsel highlights major national cases which resulted in large settlements, *i.e.*, the City of Ferguson investigation by the Justice Department reflecting a pattern of racially-biased police enforcement in March 2016, and the City of Cleveland's settlement with Tamir Rice's family for $6 million in April 2016. The second mediation for this case was shortly thereafter on April 15, 2016. Although at this point it is pure conjecture whether these events led to an increase in the City's settlement offer, they are worth noting for the potential impact on the City and its negotiations. Former Counsel attributes the change in political landscape to the increase in the offer, not the legal work performed by Plaintiffs' Counsel (which included written discovery, retention of experts, and mediation).

Under Florida law, an attorney who performed services on behalf of a client on a contingency fee basis and who is discharged before the contingency is accomplished may recover for services only in quantum meruit. *Sohn v. Brockington*, 371 So. 2d 1089, 1093 (Fla. 1st DCA 1979). An attorney so discharged without cause is entitled to a fee based on the reasonable value of services rendered not to exceed the maximum fee provided in the fee agreement. *Rosenberg v. Levin*, 409 So. 2d 1016, 1021 (Fla. 1982). If the discharge is for cause, forfeiture of some or all of the quantum meruit fee may be appropriate. *See Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller*, 629 So. 2d 947, 955 (Fla. 4th DCA1993). The trial court must first determine the reasonable value of the services rendered by the discharged attorney. *See Kushner v. Engelberg, Cantor & Leone, P.A.*, 699 So. 2d 850, 851 (Fla. 4th DCA 1997); *Scheller*, 629 So. 2d at 954-55. If the discharge was for cause, the trial court should reduce the quantum meruit award by the amount of damages, if any, suffered by the client. *Id*. If the client's damages do not exceed the

5

quantum meruit fee, "the court is then free to consider whether forfeiture of some or all of the quantum meruit fee as already reduced by the client's damages is appropriate." *Id*. The court should look at the totality of the circumstances to fashion an award that is fair to both the attorney and the client. *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 369 (1995). The balancing of relevant factors and the ultimate determination of the quantum meruit award are matters within the sound discretion of the trial court. *Id*.

### *a. A summary proceeding was the appropriate manner to dispose of this fee dispute*

The Court entered an order granting in part the Unopposed Motion and permitted the charging lien and attorney's fees issues to proceed under this Court's supplemental jurisdiction in the form of a summary proceeding. Doc. 96 (citing to *Daniel Mones, P.A. v. Smith*, 486 So. 2d 559, 561 (Fla. 1986)). In *Smith*, the Florida Supreme Court made it clear that "[a] summary proceeding in the original action represents the preferred method of enforcing an attorney's charging lien in Florida." 486 So. 2d at 561. "A summary proceeding represents a speedy and simple method to set the amount of the charging lien." *New Eng. Mut. Life Ins. Co. v. Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A.*, 690 So. 2d 1354, 1356 (Fla. 3d DCA 1997). The Magistrate Judge denied Plaintiffs' construed motion to reconsider the Order on the Unopposed Motion (Doc. 100) and stated that the Plaintiffs' proposed procedure for the summary proceedings which included a complaint, answer, discovery period, and motions were unnecessary. Doc. 104. The Eleventh Circuit has made it clear that "[a] request for attorney's fees should not result in a second major litigation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

6

Under Florida law, a summary proceeding calls for limited discovery and an expedited litigation schedule, and a trial if necessary. *See* Fla. Stat. § 51.011. But an evidentiary hearing and limited discovery, as Plaintiffs' Counsel requested, is unnecessary in this case. Plaintiffs' Counsel had the opportunity to present all evidence to the Court through affidavits and pleadings. *See* Docs. 115, 116, 117, 119, 120122, 124, and 126. The Court need not resolve every disputed fact, the standard for quantum meruit attorney's fees awards is the "totality of the circumstances." *See Poletz*, 652 So. 2d at 369. Even the case cited by Plaintiffs' Counsel, *Thompson v. Pharm. Corp. of Am., Inc.*, recognizes that "[a]n evidentiary hearing is unnecessary for issues about which the district court possesses sufficient expertise" including "the reasonableness of the fee, the reasonableness of the hours and the significance of the outcome." 334 F.3d 1242, 1245 (11th Cir. 2003) (quoting *Norman*, 832 F. 2d at 1304). *See also Baby Buddies, Inc. v. Toys R Us, Inc.*, 8:03-CV-1377-T-17MAP, 2011 WL 4382285, at *6 (M.D. Fla. Sept. 20, 2011) (denying evidentiary hearing on attorney's fees issue when sufficient record evidence existed).

The Magistrate Judge's order highlighted the fact that because the fee would be determined on a quantum meruit basis, nothing more than a summary proceeding was needed. Doc. 141 at 2. Under a theory of quantum meruit for attorney's fees, the attorney must establish "the actual value of the services to the client." *Poletz*, 652 So. 2d at 369. Therefore, "while the time reasonably devoted to the representation and a reasonable hourly rate are factors to be considered in determining a proper quantum meruit award, the court must consider all relevant factors surrounding the professional relationship to ensure that the award is fair to both the attorney and client." *Id*. The R&R effectively reviewed all of the evidence in the record, which was voluminous and included affidavits from the attorneys, Plaintiffs, and fee experts. The Magistrate Judge determined that under the totality of the circumstances $200,000 was a reasonable fee reflecting

the value that Former Counsel brought to the Plaintiffs in light of the 2.68 million settlement. The record reflects that Former Counsel spent a lot of time individually with Plaintiffs conducting interviews, investigations, and even running personal errands (for which the Magistrate Judge appropriately excluded time).[4] The Court agrees with the R&R's conclusions and overrules the Objection on this issue.

### b. *Former Counsel is entitled to a quantum meruit fee award*

As stated in the R&R, under Florida law an attorney may recover for services he rendered in quantum meruit if the attorney performed those services for a client based on a contingency fee agreement and the client discharged the attorney prior to the contingency being accomplished. *Sohn,* 371 So. 2d at 1093. *See also Poletz*, 652 So. 2d at 369; *Rosenberg*, 409 So. 2d at 1021, *Badillo v. Playboy Ent. Group, Inc.,* 302 Fed. Appx. 901 (11th Cir. 2008), and *Chandris S.A. v. Yanakakis*, 668 So. 2d 180, 186 n.4 (1995). Plaintiffs' Counsel objects to the Magistrate Judge's consideration of "limited factors" and argues that Former Counsel's unethical behavior should be one of the factors. The Court disagrees that Former Counsel's behavior in insisting that Plaintiffs' accept the settlement offer and failing to immediately file a notice of withdrawal in the case were necessarily "unethical" under these circumstances.[5] Nonetheless, the Court agrees with the Magistrate Judge's analysis under the totality of the circumstances that Former Counsel provided value to the case and their efforts contributed to the increased settlement offer.

Also Plaintiffs' Counsel's attempt to distinguish *Chandris*, upon which the R&R relies, falls short. Although *Chandris* dealt with the Code of Professional Responsibility, D.R. 2-106, the

---

[4] For example, billing records reflect that Mr. Wardell retrieved an iPad for Quade Everett and was present while he attempted to learn its functions, mediated domestic disputes, etc. *See* Doc. 141 at 7.
[5] There is evidence that Plaintiffs wanted Former Counsel to co-counsel with Dolman Law Group and Plaintiffs' Counsel, and at one time Quade Everett contacted Former Counsel via text requesting to retain them. *See* Docs. 81-9, 105 at 13-14.

1987 amendments to the rules as reflected in the Rules Regulating The Florida Bar are consistent with the holding in *Chandris*. *Chandris* stated that "even though a member of The Florida Bar cannot claim fees based on a noncomplying agreement, the attorney would still be entitled to the reasonable value of his or her services on the basis of quantum meruit." 668 So. 2d at 186, n. 4. Rule 4-1.5 of the Rules Regulating The Florida Bar states, in general, that contracts are ordinarily enforceable unless, illegal, obtained through improper advertising or solicitation, prohibited by the rule, or clearly excessive as defined by the rule. *The Florida B. re Amendments to the R. Regulating the Florida B.*, 519 So. 2d 971, 975 (Fla. 1987). The Rule is not inconsistent with the holding in *Chandris* that an attorney seeking fees who has a noncomplying agreement must pursue the claim on a quantum meruit theory.

The Magistrate Judge concluded that Plaintiffs agreed to Former Counsel's contract (Doc. 81, Ex. 1) and Former Counsel performed services based on that agreement. Doc. 141 at 5. But because the contingency was never accomplished under the fee agreement, Former Counsel could only receive a fee under a quantum meruit analysis of the reasonable value of their services. *Id*. Plaintiffs' Counsel argues that there was no valid contract because the 40% contingency fee must be approved by a court before or upon filing of the complaint in Court. And because Former Counsel did not move to do so until after a year, they argue that the contract was invalid. But the fee agreement states that if the fee "for any reason be determined to be illegal or excessive, this contract will be modified to a level equal to the Florida Bar approved contingency fee agreement." Doc. 81-1, Ex. 1 at 2. Also, the issue was likely moot given that the offer pending at the time of

Former Counsel's representation was below the $1 million threshold required to trigger the sliding scale fee. [6]

Plaintiffs' Counsel also argues that the Court did not rely on or request proper documentation to calculate the fee award. The Court notes that Former Counsel provided detailed billing statements, Doc. 106, Ex. A; Doc. 107, Ex. A; Doc. 111, Ex. A, and affidavits from the billing attorneys Doc. 106, 107, 108, 111 and the expert affidavit of Bill Jung, Doc. 109. It is unclear what other "documentation" Plaintiffs' Counsel refers to, but on this record, the Court has sufficient evidence to determine a reasonable fee award. *See Norman*, 836 F.2d at 1303 (noting that specific and detailed evidence from which the court can determine the reasonable hourly rate includes "records to show the time spent on the different claims, and the general subject matter of the time expenditures … set out with sufficient particularity so that the district court can assess the time claimed for each activity … [and] a summary, grouping the time entries by the nature of the activity or stage of the case.") (internal citations omitted). *See also Poletz*, 652 So. 2d at 369 ("[T]he time reasonably devoted to the representation and a reasonable hourly rate are factors to be considered in determining a proper quantum meruit award[.]").

Plaintiffs' Counsel construes "documentation" too broadly and may be referring to notes, copies of investigations, etc. which they would have sought through discovery. The Court rejects this broad reading of documentation. For billing purposes, the Court is within its purview to review the billing records and determine whether the time requested is reasonable. The Magistrate Judge made an across the board reduction of the time requested for all attorneys pursuant to *Bivins v. Wrap It Up*, Inc., 548 F.3d 1348 (11th Cir. 2008) to account for excess time. And under Florida

---

[6] Rule Regulating The Florida Bar 4-1.5(f)(4)(B)(i)(b), provides for 40% of recovery up to $1 million, 30% of any portion of recovery between $1 million and $2 million, and 20% of any portion of the recovery exceeding $2 million without prior court approval.

10

law, there is no absolute requirement that contemporaneous records be maintained to obtain fees, so the billing records are more than sufficient. *See Badillo*, 302 Fed. Appx. 901, 904 (citing *Brake v. Murphy*, 736 So. 2d 745, 746 (Fla. 3d DCA 1999)). The Court agrees with the R&R's analysis and conclusions and overrules the Objection on this issue.

### *c. Plaintiffs' Counsel has identified no damages to set off the fee award*

The Objection argues about whether the Former Counsel's termination was "for cause." The R&R assumed that the termination was for cause, so no prejudice exists to Plaintiffs. There was no need for an evidentiary hearing on the matter as stated above. Although Plaintiffs are correct that if the discharge is for cause "forfeiture of some or all of the quantum meruit fee may be appropriate[,]" *Badillo*, 302 Fed. Appx at 903; Plaintiffs have not identified any "damages" which should reduce the quantum meruit award. Plaintiffs' Counsel argues that the damages were improperly limited to financial loss, but cites to no authority for this proposition. Instead Plaintiffs' Counsel argues that Former Counsel improperly pressured the Plaintiffs to settle, and they ignored instructions to withdraw from the case. Even assuming those arguments are true, they do not justify forfeiture of the $200,000 quantum meruit award.

Ms. Everett's contention that she did not understand the fee agreement also does not change the analysis. In her Affidavit, (Doc. 115-1, Ex. 7), Ms. Everett states that " I did not understand, nor was it explained to me, that I could have refused to sign the 40% attorney fee; could have requested a lower fee, or sought another attorney who would have charged a lower fee. I also did not understand that I had to sign a petition requesting approval for Mr. Wardell to charge an attorney fee of 40%." *Id*. at ¶¶ 8-9. Nonetheless, it is clear under Florida law that when "a member of The Florida Bar cannot claim fees based upon a noncomplying agreement, the attorney would still be entitled to the reasonable value of his or her services on the basis of quantum meruit."

*Chandris*, 668 So. 2d at 186 n. 4. So the issue is whether Former Counsel added value to Plaintiffs' case even if they lacked a compliant fee agreement. This issue therefore does not change the Court's analysis. *See* Doc. 141 at 5, n. 5.

Plaintiffs' Counsel also focuses on Former Counsels' insistence that the Plaintiffs accept the City's offer, even after the Plaintiffs rejected the offer several times and sought other counsel. They also point to communications between Former Counsel and Quade Everett, where Mr. Everett attempted to retain him on his own after they were terminated. And they point to Former Counsel's two requests for extensions of time to respond to the Motion to Dismiss, (Docs. 26 and 28), which Plaintiffs' Counsel characterizes as misleading the Court. In the second motion, Former Counsel had not informed the Court of the Plaintiffs' request for them to withdraw from the case and represented that there were ongoing settlement negotiations even though Plaintiffs rejected the offer. None of these issues changes the Court's analysis regarding the quantum meruit award. In the R&R, the Magistrate Judge reviewed all of the relevant evidence in the record, and made a determination regarding the value of the benefit conferred under the totality of the circumstances. The award is much less than requested and took into account the limits of Former Counsel's representation.

Plaintiffs' Counsel argues that Former Counsel did not confer a benefit to Plaintiffs sufficient to justify a $200,000 fee award. They point to the numerous alleged shortcomings in Former Counsel's proposal for settlement. *See* Doc. 144 at 9, 11-16. They also argue that Former Counsel's rates are unjustifiably high given his low level of commitment evidenced by his failure to retain experts, and his insistence that the Plaintiffs accept the settlement proposal. The Magistrate Judge reduced the hourly rates proposed by Former Counsel significantly, to bring it in line with the amounts awarded in the cases cited to in the R&R, and reduced the hours requested

by over 50 hours for work it deemed unnecessary, unjustified or duplicative. *See* Doc. 141 at 6-8. The Court has reviewed the billing statements and agrees with the Magistrate Judge's Recommendation.

IV. **Conclusion**

Although the interaction between Former Counsel and Plaintiffs was less than ideal, and Plaintiffs' Counsel disagrees with Former Counsel's specific approach to the case, especially the settlement negotiations with the City, the Court concludes that Former Counsel contributed significant value to the case and the ultimate settlement. The Court has reviewed all of the factors that contributed to the end result in this case, including the Former Counsel's initial groundwork and complaints, the series of events leading up to Former Counsel's termination, Former Counsel's billing records, the additional groundwork performed by Plaintiffs' Counsel, and the relationships between Plaintiffs and their Former Counsel. Reviewing this information under the totality of the circumstances, the Court concludes that $200,000 is a reasonable value to attribute to Former Counsel's contributions to the case, and that number reflects an award that is fair to both the attorney and the client.

**Accordingly it is ORDERED**:

1. Plaintiffs' Objections to the Report and Recommendations [sic] of the Magistrate Judge (Doc. 144) are **OVERRULED**.

2. The Report and Recommendation of the Magistrate Judge (Doc. 141) is **ADOPTED, CONFIRMED,** and **APPROVED** in all respects and is made a part of this Order for all purposes, including appellate review.

3. The Motion for Attorney's Fees and Costs (Doc. 105) is **GRANTED-IN-PART** to the extent that Former Counsel, Wardell & Quezon, P.A., are entitled to a $200,000 quantum meruit fee award.

4. The Court will enter a separate order enforcing the charging lien.

**DONE AND ORDERED** in Tampa, Florida on April 24, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any